IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
September 16, 2021 Session

## WILLIE ADAMS v. ILLINOIS CENTRAL RAILROAD COMPANY

Appeal from the Circuit Court for Madison County
No. C-19-196       Donald H. Allen, Judge
_____

### No. W2020-01290-COA-R3-CV
_____

Appellee alleges that Appellant abused the discovery process. The trial court agreed, granting Appellee's motion to exclude Appellant's expert witnesses and, consequently, granting summary judgment in Appellee's favor. Because the basis for the imposition of the sanction is unclear and the trial court does not engage in the necessary analysis regarding discovery sanctions, we vacate and remand for further proceedings.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Vacated and Remanded.**

J. STEVEN STAFFORD, P.J., W.S., delivered the opinion of the court, in which KENNY ARMSTRONG and CARMA DENNIS MCGEE, JJ., joined.

Thomas J. Joyce and Hailey A. Tutton, Conshohocken, Pennsylvania and Floyd Don Davis, Winchester, Tennessee, for the appellant, Willie Adams.

Brooks E. Kostakis and John J. Bennett, Memphis, Tennessee and Thomas R. Peters, Belleville, Illinois, for the appellee, Illinois Central Railroad Company.


OPINION

FACTS/PROCEDURAL HISTORY

Plaintiff/Appellant Willie Adams ("Appellant") filed a complaint under the Federal Employers' Liability Act ("FELA") on January 31, 2018, in Shelby County Circuit Court alleging, *inter alia*, that his colon cancer was caused by the negligence of his former employer, Illinois Central Railroad Company ("Appellee"). The parties engaged in some discovery before the case was transferred by agreement to Madison County Circuit Court

("the trial court") in August 2019. The parties entered into an agreed scheduling order on January 15, 2020, which provided in relevant part as follows:

1. Responses to all outstanding written discovery shall be provided by February 28, 2020.

2. All discovery depositions of any fact witness, excluding experts, shall be concluded on or before June 12, 2020.

3. On or before March 18, 2020, [Appellant] shall designate any expert witnesses he may call at trial. This designation shall be accompanied by supplemental interrogatory answers and/or expert witness disclosure information setting forth the information required by [Tennessee Rules of Civil Procedure] 26.02(4)([A])([i]) and 26.05.

* * *

7. All designated expert witnesses shall be made available for discovery deposition, if requested, on or before May 29, 2020. . . .

8. No evidentiary/trial deposition may be taken unless the opposing party has had the opportunity to conduct a discovery deposition at least five (5) days prior to the date established for the taking of the evidentiary/trial deposition.

9. All evidentiary depositions shall be taken on or before June 5, 2020.

* * *

12. The jury trial of this matter is set to begin August 12, 2020, [] in Madison County Circuit Court, before the Honorable Donald Allen.

13. The schedules and deadline dates set forth herein may be modified only by written consent of counsel for all parties, or by Order of this Court upon sufficient cause shown.

In the early months of 2020, the COVID-19 virus caused "an unprecedented public health crisis" around the world, *Fisher v. Hargett*, 604 S.W.3d 381, 386 (Tenn. 2020), which, to this day, "rages on, . . . posing new risks," *In re MCP NO. 165, No. 21-4027*, 2021 WL 5989357, at *1 (6th Cir. Dec. 17, 2021). On March 13, 2020, the Tennessee Supreme Court entered an emergency Order related to COVID-19, which stated, in relevant part:

Deadlines set forth in court rules, statutes, ordinances, administrative rules, or otherwise that are set to expire between March 13 and March 31, 2020 are hereby extended through April 6, 2020.

\* \* \*

This order applies statewide to all courts and court clerks' offices except administrative courts within the Executive Branch and federal courts and federal court clerks' offices located in Tennessee.

According to Appellant's brief, Appellant's counsel's law firm was closed and transitioned to remote work between March 13, 2020 and May 31, 2020. On March 26, 2020, Appellee's counsel emailed Appellant's counsel stating that Appellee had not received Appellant's designations and disclosures of experts, which were due on March 18, 2020 under the scheduling order. Appellant's counsel responded via email the next day, stating that Appellant intended to call R. Leonard Vance, Ph.D. as his liability expert, and Theron Blickenstaff, M.D. as his medical expert. Appellant's counsel attached Vance and Blickenstaff's curricula vitae to his email response and further stated that Appellant's counsel would provide Appellee's counsel with narrative expert reports when Appellant's counsel received them. According to Appellee's brief, Vance and Blickenstaff were new experts—whereas two other experts, Dr. Roy Berger and Michael Ellenbecker, had previously been disclosed, prior to the case being transferred to the trial court.

On March 25, 2020, the Tennessee Supreme Court issued another COVID-19-related Order, which further extended the deadlines referenced in the March 13 Order to May 6, 2020. On March 31, 2020, the supreme court issued a third Order, titled "Order Clarifying the Extension of Deadlines," which provided, in pertinent part: "The Court further clarifies that the Court's prior orders apply generally to discovery deadlines. However, the orders do not apply to deadlines set forth in pre-trial scheduling orders entered pursuant to Rule 16 of the Tennessee Rules of Civil Procedure. Trial courts may extend such deadlines in their discretion."

On April 15, 2020, Appellant's counsel emailed Vance and Blickenstaff's narrative reports to Appellee's counsel. The next day, Appellee's counsel emailed Appellant's counsel requesting dates that Vance and Blickenstaff were available for discovery depositions. On April 27, 2020, counsel for Appellee reiterated this request. On May 1, 2020, Appellee's counsel emailed Appellant's counsel requesting "all documents relied upon or referenced by []Vance and []Blickenstaff for purposes of this case." According to Appellee's brief, Appellee's counsel "attempted additional communication to [Appellant's] counsel via phone, for purposes of both requests [i.e., discovery deposition dates and the documents relied on by Vance and Blickenstaff], but received no response . . . ."

On May 27, 2020, Appellee filed a "Motion to Exclude Appellant's Expert

Witnesses Based on Failure to Comply with Agreed Scheduling Order." Therein, Appellee claimed that Appellant had: "failed to provide the required and requested 26.02(4)([A])([i]) information of the previously named expert witnesses, Dr. Roy Berger and Michael Ellenbecker, by March 18, 2020"; identified Vance and Blickenstaff late, on March 27, 2020 (per the March 18, 2020 scheduling order deadline) and inadequately, as "no narrative report or other disclosure of the substance or grounds for any expert's opinion was provided . . . ."; "finally provided the requisite narrative report of Dr. Vance and Dr. Blickenstaff" on "April 15, 2020, nearly a month after [Appellant's] expert disclosure deadline and a mere two days prior to [Appellee's] expert disclosure deadline"; did not, "at [any] time prior to the expiration of [Appellant's] expert witness disclosure deadline of March 18, 2020, nor up to the present date, [] ever mention to [Appellee], much less seek or request, any agreed extension of this deadline,"; did not serve amended discovery responses substituting the two newly named experts for the previous experts, pursuant to Rule 26.05 of the Tennessee Rules of Civil Procedure; did not make Vance and Blickenstaff available for discovery depositions, in contravention of the agreed scheduling order; and did not provide the materials that Vance and Blickenstaff relied on in forming their opinions. Appellee asserted that it had been prejudiced by Appellant's discovery failures because it was frustrated in preparing a defense and its own properly and timely disclosed experts were deprived of the opportunity to sufficiently analyze Appellant's experts' opinions. Appellee thus requested that the trial court exclude Appellant's expert evidence pursuant to Rules 16 and 37 of the Tennessee Rules of Civil Procedure.

Appellant responded on June 11, 2020, arguing, *inter alia*, that exclusion of his experts was not the appropriate remedy, because it would ultimately eliminate his only potential recourse for recovery. Appellant claimed that COVID-19 impacted his ability to properly complete discovery, and that he had not deliberately acted in bad faith, to prejudice Appellee, or to ignore opposing counsel or the court's orders. He argued that under relevant caselaw, exclusion of experts is only appropriate if the discovery failure is knowing and deliberate. He stated that he had assumed, pursuant to the Tennessee Supreme Court's March 13, 2020 Order, that the discovery deadlines in this case were extended. Nevertheless, he had responded to Appellee's March 26, 2020 email, providing Vance and Blickenstaff's names, that they would be testifying as liability and medical causation experts, respectively, and their resumes, following up with their narrative reports on April 15, 2020. He also contended, citing various Tennessee cases, that he had given Appellee reasonable notice of the nature of the testimony to be expected from the experts required under Rule 26.02(4) and necessary to ensure against unfair surprise. He further explained that his experts are in "high risk" categories for complications from COVID-19, and thus their availability for depositions was limited. Appellant asked the trial court to modify the agreed scheduling order in light of COVID-19 to allow Appellee's experts time to review Appellant's experts' narrative reports and to make Appellant's expert witnesses available for depositions.

On June 30, 2020, Appellee filed a motion for summary judgment, arguing that

Appellant's experts were required in the case, and therefore, if the motion to exclude the experts was granted, Appellee was entitled to summary judgment. Appellant responded in opposition on July 10, 2020, and again requested that the trial court modify the scheduling order in light of COVID-19 and reopen discovery to allow Appellee's experts time to review Appellant's experts' reports and make Appellant's experts available for depositions. He also conceded that if his experts were excluded, Appellee would necessarily prevail on summary judgment.

The trial court held a hearing on July 17, 2020 on Appellee's motions to exclude expert testimony and for summary judgment, where counsel for each party made arguments. No exhibits or other evidence were officially entered in the record, nor did any witness testify under oath. Counsel for Appellant reiterated many of the arguments Appellant had made in his response to Appellee's motion to exclude, explaining, *inter alia*, that neither Vance nor Blickenstaff was willing to conduct any depositions when Appellee requested their depositions, even via Zoom, because of COVID-19 and their own related health risks (Blickenstaff had a medical note to that effect and Vance, who is located in Virginia, had stated that he would not travel for any trials). Instead, both experts were not receptive to participating in depositions until the week prior to the July 17 hearing. Therefore, Appellant's counsel had finally procured each expert's availability to be deposed via video conference on August 4, 5, or 6 (each expert was still unwilling to testify live). He told the court that he had offered those dates to Appellee's counsel before the hearing started. Because those dates were close to the original trial date of August 12, he also asked the trial court for a brief continuance, offering to see if his experts would be willing to conduct depositions earlier and explaining that he did not want to prejudice Appellee by rushing the trial forward. He also explained that he had asked Appellee's counsel when he arrived for the hearing if Appellee would agree to modify the scheduling order, which it would not.

The trial court asked Appellant's counsel which portions of the agreed scheduling order Appellant had complied with, and Appellant's counsel answered that Appellant had timely completed the outstanding written discovery (by February 28, 2020) and the discovery depositions of fact witnesses, including Appellant and two treating doctors (prior to June 12, 2020). Appellee's counsel claimed, however, that Appellee had not received certain previously requested documents. Counsel for Appellant also represented that he had not acted deliberately in failing to meet some of the discovery requirements. Instead, he apologized for his lack of communication with Appellee's counsel, accepted responsibility for not meeting all discovery requirements, and repeatedly offered to accommodate Appellee's discovery needs going forward. He informed the trial court that Appellant did not possess information regarding the foundation for Appellee's experts' reports, and thus was not at an advantage over Appellee (though he acknowledged that Appellant had not requested such information from Appellee).

The trial court orally granted both of Appellee's motions at the conclusion of the

- 5 -

hearing on July 17, 2020. The trial court later entered written orders on August 19, 2020. In its order granting the motion to exclude experts, the trial court stated, *inter alia*:

[Appellant] failed to comply with th[e] deadline and requirement of the Agreed scheduling order [to designate expert witnesses, accompanied by supplemental interrogatory answers and/or expert witness disclosure information setting forth the information required by Rules 26.02(4)(A)(i) and 26.05, on or before March 18, 2020].

\*     \*     \*

At no time prior to the expiration of [Appellant's] expert witness disclosure deadline of March 18, 2020, did [Appellant] ever suggest to [Appellee] or its counsel, much less seek or request, any extension of this deadline.

\*     \*     \*

[Appellee's] counsel repeatedly requested discovery depositions of both experts upon receipt of [Appellant's] untimely expert opinions and reports. These requests of [Appellee] received no response from [Appellant] whatsoever.

\*     \*     \*

[A]ll designated expert witnesses were required to be made available for discovery deposition, if requested, on or before May 29, 2020. [Appellant] failed to comply with this deadline and requirement of the Agreed Scheduling Order. Up to the time of hearing, [Appellant's] counsel had made no attempt to remedy this failure, or even to communicate any alleged reason for [Appellant's] noncompliance, to [Appellee's] counsel.

Rule 37 of the Tennessee Rules of Civil Procedure permits this Court to fashion appropriate sanctions where a party fails to comply with a court order (Tenn. R. Civ. P. 37.02) and fails to supplement their discovery responses as required by Tenn. R. Civ. P. 26.05 (Tenn. R. Civ. P. 37.03). Rules 37.02(B) and 37.03(1) permit this Court to prohibit [Appellant] from introducing his experts' testimony into evidence. The 2006 Advisory Commission Comment to 37.03 states in part: "The ***usual sanction*** will be exclusion of evidence at trial." (emphasis added). In addition, Rule 16.06 of the Tennessee Rules of Civil Procedure provides that when "a party or party's attorney fails to obey a scheduling or pretrial order . . . the judge, upon motion or the judge's own initiative, may make such orders with regard

thereto as are just," including "any of the orders provided in Rule 37.02."

The Court finds, despite [Appellant's] arguments, that COVID-19 had no effect on this case. The Agreed Scheduling Order was in place and effective upon the parties, and the Court expected all counsel to comply with the deadlines and requirements set forth therein in preparation for a jury trial set for August 12, 2020. [Appellee] has complied with the Agreed Scheduling Order. However, [Appellant] failed to timely disclose his experts pursuant to the Agreed Scheduling Order on March 18, 2020. [Appellant], further, failed to produce his late disclosed experts, Dr. Vance and Dr. Blickenstaff, by May 29, 2020, as required by the Agreed Scheduling Order. The Court finds that [Appellee] has been prejudiced by [Appellant's] failure to abide by the Agreed Scheduling Order and by [Appellant's] counsel's failure to communicate with defense counsel, failures that were not harmless. The Court has considered fully [Appellant's] response and arguments in opposition to this motion and finds that they lack merit, and further finds that [Appellant's] failure to abide by the Agreed Scheduling Order lacks just cause to deny the relief sought by [Appellee] in its motion. The Court therefore grants [Appellee's] motion to exclude [Appellant's] experts R. Leonard Vance Ph.D.'s and Theron Blickenstaff, M.D.'s opinions and testimony from trial pursuant [to] Rules 37.02, 37.03, and 16.06 of the Tennessee Rules of Civil Procedure.

The trial court incorporated the entirety of the transcript from the July 17, 2020 hearing by reference into its final order.[1] The trial court's comments to Appellant's counsel during the hearing included the following:

[T]he [Tennessee Supreme Court's March 13] order was very specific. It did not affect any scheduling orders already in place by any trial Courts. I mean, it is very specific about that. . . . So I'm not sure why anybody would think that somehow their scheduling order had been affected because that's not what the Tennessee Supreme Court order said.

\*       \*       \*

[Y]ou wait until this morning, this morning, to come in and give [Appellee] dates that your experts would be available. And those dates are just like a week before the trial date; that's not fair to [Appellee].

---

[1] We note that we have previously held, in the context of party-prepared orders, that such "matters not a proper part of the [court's] determination [should not be] included" in the written order. ***Smith v. UHS of Lakeside, Inc.***, No. W2011-02405-COA-R3-CV, 2013 WL 210250, at \*9 (Tenn. Ct. App. Jan. 18, 2013) (citations omitted), *aff'd*, 439 S.W.3d 303 (Tenn. 2014).

\* \* \*

You knew March 18th was your deadline to disclose your experts, you knew that, you didn't do it. Then . . . about a week later they sent you an e-mail saying, Hey, we haven't received it; are you going to do it? Well, at least you sent the names, I'll give you that. But then you haven't done anything else to make them available for them to take their depositions.

\* \* \*

[A]gain, this is a situation where the COVID-19 had no [e]ffect on this case, okay. . . . . What the Court ordered for the scheduling order, [Appellant's] counsel has just ignored. You have not complied with it at all.[2]

Based on the exclusion of the experts, the trial court also granted summary judgment in favor of Appellee. Appellant filed a motion to alter or amend the judgment, which was denied by order of December 1, 2020. Appellant thereafter filed a timely appeal.

## ISSUES PRESENTED

Appellant raises the following issues, as we perceive them:[3]

1. Whether the trial court abused its discretion when it excluded Appellant's expert witnesses.

2. Whether the trial court properly granted Appellee's motion for summary judgment.

## STANDARD OF REVIEW

As this Court has previously explained,

_____

[2] The trial court's final order granting the motion to exclude is only signed by counsel for Appellee. Thus, it appears that the order may have been party-prepared. We have specific rules for party-prepared orders in Tennessee. "First, the findings and conclusions must accurately reflect the decision of the trial court. Second, the record must not create doubt that the decision represents the trial court's own deliberations and decision." *Smith v. UHS of Lakeside, Inc.*, 439 S.W.3d 303, 316 (Tenn. 2014). To that end, a court's written order should "accurately reflect the trial court's oral rulings." *Lakeside*, 2013 WL 210250, at \*6, *aff'd*, 439 S.W.3d 303 (Tenn. 2014). Here, the findings in the written order do not precisely match the trial court's oral rulings, as certain additional findings are made in the order that are not reflected in the transcript. To ensure that a party-prepared order is the product of a trial court's independent judgment, the order should mirror the court's oral rulings.

[3] Appellant does not raise any issue regarding the denial of his motion to alter or amend. As such, we will not discuss it in detail.

> Rule 37 of the Tennessee Rules of Civil Procedure declares that the courts have the power to impose sanctions upon a party for failure to make or cooperate in discovery. A variety of sanctions are available to the court, including, in appropriate cases, dismissing the action or proceeding or any part thereof, or rendering a judgment by default against the disobedient party. Less severe sanctions include prohibiting parties from introducing designated evidence, refusing to allow a party to support or oppose designated claims or defenses, and striking out pleadings or parts of pleadings.

*Griffith Servs. Drilling, LLC v. Arrow Gas & Oil, Inc.*, 448 S.W.3d 376, 379 (Tenn. Ct. App. 2014) (internal quotation marks omitted) (quoting *Cincinnati Ins. Co. v. Mid-S. Drillers Supply, Inc.*, No. M2007-00024-COA-R3-CV, 2008 WL 220287 (Tenn. Ct. App. Jan. 25, 2008)). "A trial court has broad discretion when sanctioning a party for failing to comply with the discovery rules or orders of the court." *Gordon v. Chapman*, No. W2019-01655-COA-R3-CV, 2020 WL 7861471, at *2 (Tenn. Ct. App. Dec. 22, 2020) (citations omitted). Therefore, "[a] trial judge's exclusion of expert witness testimony is subject to an abuse of discretion review by this Court." *Buckner v. Hassell*, 44 S.W.3d 78, 83 (Tenn. Ct. App. 2000) (citing *Lyle*, 746 S.W.2d at 699 (citing *Brooks v. United Uniform Co.*, 682 S.W.2d 913 (Tenn. 1984))).

"Discretion to impose sanctions does not, however, free trial courts from their responsibility to exercise reason and judgment." *Langlois v. Energy Automation Sys., Inc.*, 332 S.W.3d 353, 357 (Tenn. Ct. App. 2009). "[D]iscretionary decisions are not left to a court's inclination, but to its judgment; and its judgment is to be guided by sound legal principles." *Id.* (quotation marks and citations omitted). "A trial court abuses its discretion when it applies an incorrect legal standard or reaches a decision which is against logic or reasoning and which causes an injustice to the complaining party." *Doe 1 ex rel. Doe 1 v. Roman Cath. Diocese of Nashville*, 154 S.W.3d 22, 42 (Tenn. 2005). "Correct review of a decision to impose sanctions [] involves comparison of a sanction's individual punitive impact and its general deterrent effect. Only when a sanction's punitive impact substantially outweighs its deterrent effect will we conclude that a trial court has abused its discretion, so long as the court has applied the correct legal framework." *Langlois*, 332 S.W.3d at 358.

## DISCUSSION

### I.

An overview of the rules governing Appellant's obligations during discovery is helpful to our analysis in this matter. Rule 26.02(4)(A) governs expert witnesses, and states in relevant part:

Discovery of facts known and opinions held by experts, otherwise discoverable under the provisions of subdivision (1) of this rule and acquired or developed in anticipation of litigation or for trial, may be obtained only as follows:

(i) A party may through interrogatories require any other party to identify each person whom the other party expects to call as an expert witness at trial, to state the subject matter on which the expert is expected to testify, and to state the substance of the facts and opinions to which the expert is expected to testify and a summary of the grounds for each opinion. In addition, upon request in an interrogatory, for each person so identified, the party shall disclose the witness's qualifications (including a list of all publications authored in the previous ten years), a list of all other cases in which, during the previous four years, the witness testified as an expert, and a statement of the compensation to be paid for the study and testimony in the case.

(ii) A party may also depose any other party's expert witness expected to testify at trial.

Also relevant to expert witnesses, Rule 26.05(A)(1) goes on to provide:

A party who has responded to a request for discovery with a response that was complete when made is under no duty to supplement the response to include information thereafter acquired, except as follows:

(1) A party is under a duty seasonably to supplement the party's response with respect to any question directly addressed to (A) the identity and location of persons having knowledge of discoverable matters, and (B) the identity of each person expected to be called as an expert witness at trial, the subject matter on which the person is expected to testify, and the substance of that testimony.

Other Rules of Civil Procedure provide guidance regarding sanctions for a party that does not properly engage in discovery. For example, Rule 16.06 provides courts with authority to sanction parties for failing to obey scheduling orders, including by entering orders provided in Rule 37.02. Rule 37.02 in turn provides, in relevant part:

If a . . . party . . . fails to obey an order to provide or permit discovery, . . . the court in which the action is pending may make such orders in regard to the failure as are just, and among others the following:

(A) An order that the matters regarding which the order was made or any other designated facts shall be taken to be established for the purposes of the action in accordance with the claim of the party obtaining the order;

(B) An order refusing to allow the disobedient party to support or oppose designated claims or defenses, or prohibiting that party from introducing designated matters in evidence;

(C) An order striking out pleadings or parts thereof, or staying further proceedings until the order is obeyed, or dismissing the action or proceeding or any part thereof, or rendering a judgment by default against the disobedient party;

(D) In lieu of any of the foregoing orders or in addition thereto, an order treating as a contempt of court the failure to obey any orders . . . .

Rule 37.03(1) further provides:

A party who without substantial justification fails to supplement or amend responses to discovery requests as required by Rule 26.05 is not permitted, unless such failure is harmless, to use as evidence at trial, at a hearing, or on a motion any witness or information not so disclosed. In addition to or in lieu of this sanction, the court on motion may impose other appropriate sanctions. In addition to requiring payment of reasonable expenses (including attorney fees) caused by the failure, these sanctions may include any of the actions authorized under Rule 37.02(A), (B), and (C) and may include informing the jury of the failure to supplement or amend.

"Discovery sanctions serve a three-fold purpose: (1) to secure a party's compliance with the discovery rules, (2) to deter other litigants from violating the discovery rules, and (3) to punish parties who violate discovery rules." ***Magness v. Couser***, No. M2006-00872-COA-R3-CV, 2008 WL 204116, at *6 (Tenn. Ct. App. Jan. 24, 2008) (citation and internal quotation marks omitted). This Court has explained that

the powers of the court are not unlimited, and [] the inherent powers of the court [including to take action to prevent discovery abuse[4]] must be exercised with both restraint and discretion. . . . [T]he punishment must fit the offense

---

[4] In this Opinion, we use "discovery abuse" (or different versions thereof) as an overarching term to encompass any violation or other failure with respect to discovery. "Discovery abuse" is specifically defined as: "1. The misuse of the discovery process, esp. by making overbroad requests for information that is unnecessary or beyond the scope of permissible disclosure or by conducting discovery for an improper purpose. 2. The failure to respond adequately to proper discovery requests." *Black's Law Dictionary* 533 (9th ed. 2009) (key-number system and citations omitted). The facts of this case involve the latter definition.

- 11 -

[, and] the power to sanction should be used sparingly. It should not be used like a sword and used frequently . . . [because] to do so would diminish the significance when sanctions are imposed.

*Alexander v. Jackson Radiology Assocs., P.A.*, 156 S.W.3d 11, 15 (Tenn. Ct. App. 2004) (internal quotation marks omitted).

In determining the appropriate sanction when a party abuses or violates the discovery process, a trial court should consider the following four factors: (1) the party's explanation for not providing evidence during discovery; (2) the importance of the evidence; (3) the other party's need for time to prepare to meet the evidence; and (4) the possibility and propriety of granting a continuance. *See Mercer v. Vanderbilt Univ., Inc.*, 134 S.W.3d 121, 133 (Tenn. 2004) (citing *Lyle v. Exxon Corp.*, 746 S.W.2d 694, 699 (Tenn. 1988)); *Est. of Brock ex rel. Yadon v. Rist*, 63 S.W.3d 729, 732 (Tenn. Ct. App. 2001) (citing *Lyle*, 746 S.W.2d at 699).

One possible sanction is exclusion of expert witness testimony. "The rules of discovery exist, in part, to prevent 'trial by ambush.' Expert testimony should only be excluded when there would be 'unfair surprise or trial by ambush.'" *Stanfield v. Neblett*, 339 S.W.3d 22, 31–32 (Tenn. Ct. App. 2010) (internal citation omitted) (quoting *Watkins v. Affiliated Internists, P.C.*, No. M2008-01205-COA-R3-CV, 2009 WL 5173716 (Tenn. Ct. App. Dec. 29, 2009); *Austin v. City of Memphis*, 684 S.W.2d 624, 632 (Tenn. Ct. App. 1984)). "When matters have reached a point in a case where the trial judge considers the sanction of preclusion [of expert witness testimony], . . . it will usually be because the court has been unable to otherwise secure a party's compliance with the discovery rules." *Walls v. Conner*, No. E2007-01917-COA-R3-CV, 2008 WL 4735311, at *7 (Tenn. Ct. App. Oct. 27, 2008).

To this end, Tennessee courts have held that exclusion of experts may be appropriate for failure "to name an expert witness" when the failure is knowing and deliberate. *Lyle*, 746 S.W.2d at 699 (discussing a party's failure to name an expert witness until four days before trial). This heightened standard is in line with the decisions of other courts, which have held that exclusion of a necessary expert should be judged in a similar manner to the harsh sanctions of dismissal or default. *See, e.g.*, *Croydon Plastics Co. v. Lower Bucks Cooling & Heating*, 698 A.2d 625, 629 (Pa. Super. Ct. 1997) ("This Court recently held that such heightened review is appropriate when scrutinizing an order which is tantamount to dismissal in that it leads to summary judgment being granted against the sanctioned party."); *Montana State Univ.-Bozeman v. Montana First Jud. Dist. Ct.*, 2018 MT 220, ¶ 21, 392 Mont. 458, 469, 426 P.3d 541, 550 (holding that extreme sanctions necessitating a higher standard of bad conduct include those that "preclude[e] or truncat[e] litigation on the merits," such as "claim dismissal, default judgment, striking of asserted defenses, or exclusion of evidence"); *see also Branche v. Zimmer, Inc.*, No. 3:06-CV-234, 2008 WL 5504700, at *3 (E.D. Tenn. Aug. 11, 2008) ("Although the sanction imposed by the district

court for plaintiffs' alleged discovery violations was the preclusion of plaintiffs' expert witness testimony at trial, this sanction, in effect, resulted in the dismissal of plaintiffs' medical malpractice case, because without expert testimony, plaintiffs had no claim to present. Therefore, we will review the district court's actions pursuant to Fed. R. Civ. P. 37 as a sanction for discovery violations that resulted in dismissal of plaintiffs' case with prejudice.").

In Tennessee, only a very strong showing of bad conduct by the non-moving party can justify the "harsh sanction" of dismissal. *Holt v. Webster*, 638 S.W.2d 391, 394 (Tenn. Ct. App. 1982). "The power to dismiss a party's claims is best exercised infrequently and only when the punishment fits the offense." *Langlois*, 332 S.W.3d at 357 (citing *Pegues v. Illinois Cent. R. Co.*, 288 S.W.3d 350, 354 (Tenn. Ct. App. 2008)). Dismissing a case for "failure to abide by discovery rules is a severe sanction that 'run[s] counter to the judicial system's general objective of disposing of cases on the merits.'" *Williams v. Baptist Mem'l Hosp.*, 193 S.W.3d 545, 550–51, 552 (Tenn. 2006) (citations omitted). "Dismissal . . . is generally not favored in circumstances where lesser sanctions are available and where the neglect is more attributable to the attorney than the client." *Moody v. Hutchison*, 247 S.W.3d 187, 198 (Tenn. Ct. App. 2007) (citation omitted).

Instead, the harshest sanctions should be reserved for cases where, for example, there was no excusable neglect, a party offered perjured discovery responses, or there was more than a year-long delay in responding to discovery. *See Am. Exp. Centurion v. Lowrey*, No. E2011-01247-COA-R3-CV, 2013 WL 937831, at *5 (Tenn. Ct. App. March 11, 2013) (citing cases involving default judgment). In other words, we will not impose this harsh sanction unless "there has been a 'clear record of delay or contumacious conduct.'" *Langlois*, 332 S.W.3d at 357 (quoting *Shahrdar v. Global Housing, Inc.*, 983 S.W.2d 230, 236 (Tenn. Ct. App. 1998)); *see also SpecialtyCare IOM Servs., LLC v. Medsurant Holdings, LLC*, No. M2017-00309-COA-R3-CV, 2018 WL 3323889, at *18 (Tenn. Ct. App. July 6, 2018) (citations, quotation marks, and alterations omitted) (citing *Lowrey*, 2013 WL 937831, at *5) (defining contumacious as "willfully stubborn and disobedient conduct" and noting that "in order to justify the harsh result of dismissal, the party's actions in failing to timely respond to discovery must both tend to cause a delay and be scornful or willfully stubborn").

Keeping these principles in mind, we first consider Appellant's explanation for the failure to timely and properly respond to discovery. *See Mercer*, 134 S.W.3d at 133. In analyzing this issue, we note that the parties chose to rely solely on their motions and pleadings, the documents attached to these filings, and statements of counsel.[5] Appellant mainly cited the ongoing COVID-19 pandemic and the uncertainty surrounding the

---

[5] We do not encourage this practice. *Cf. Hathaway v. Hathaway*, 98 S.W.3d 675, 681 (Tenn. Ct. App. 2002) ("Statements of counsel are not evidence[.]").

Tennessee Supreme Court's March 2020 Orders as the explanations for the failure to timely and fully participate in discovery. Moreover, there does not appear to be any dispute that to the extent that Appellant was dilatory, the delays were attributable to Appellant's counsel, rather than Appellant himself. The trial court rejected Appellant's counsel's explanation, however, finding that COVID-19 had "no [e]ffect" on this case. Respectfully, we cannot agree.

On March 11, 2020, "the World Health Organization classified COVID-19 as a global pandemic." *Fisher*, 604 S.W.3d at 386.  In response, the Tennessee Supreme Court, in March 2020, issued a series of Orders that extended various deadlines "statewide" in "all courts." Specifically, on March 13, 2020, the Tennessee Supreme Court issued its first Order, which extended "[d]eadlines set forth in court rules, statutes, ordinances, administrative rules, or otherwise that are set to expire between March 13 and March 31, 2020" to April 6, 2020. This was the Order that was in place when Appellant's March 18, 2020 deadline to disclose expert information expired. The Tennessee Supreme Court issued a second Order affecting deadlines on March 25, 2020. This Order used the same language as the March 13 Order, but lengthened the application of the deadline extension until May 6, 2020.

According to the trial court, the supreme court Orders that were in place were "very specific" and did not apply to discovery deadlines. Respectfully, this finding somewhat misunderstands the timeline of events. At the time that Appellant's expert disclosures were due, the March 13 Order extended various deadlines without specific reference to discovery deadlines imposed by scheduling orders. Thus, at that time there was nothing that specifically referenced Rule 16 scheduling order discovery deadlines and their exclusion from the extension. Nor was there any mention of them when the supreme court subsequently issued its March 25 Order.

Perhaps due to this issue, the Tennessee Supreme Court felt that it was "necessary to clarify certain provisions of those orders addressing the extension of deadlines." *In re: Covid-19 Pandemic*, No. ADM2020-00428, *Order Clarifying the Extension of Deadlines* (Tenn. March 31, 2020). The March 31 Order discussed deadlines governed by Rule 16 scheduling orders for the first time and made clear that that these deadlines were not extended by the court's earlier Orders. But of course, by the time that this Order was issued, Appellant's expert disclosure deadline had already passed. Given the Tennessee Supreme Court's own decision to clarify its earlier Orders, the trial court's insistence that the supreme court Orders were clear from the start is perplexing.

Even in the midst of this "unprecedented public health crisis," Appellant did not completely shirk his duty to respond to discovery. Instead, even before the March 31 clarifying Order, Appellant made an attempt to provide information to Appellee concerning his experts. So, then, Appellant did not simply fail to name any expert at all until immediately before trial. *See Lyle*, 746 S.W.2d at 699. Certainly, with the benefit of the

- 14 -

March 31 Order, we now know that Appellant's disclosure was untimely and his actions dilatory in responding to Appellee's requests. But it is difficult to conclude that Appellant's actions amount to anything more than excusable neglect in this case. It appears that the delay in making Appellant's experts available for depositions is also attributable to COVID-19.[6] Thus, while Appellant's efforts were certainly half-hearted and insufficient, they were not scornful or blatant. *See Alexander*, 156 S.W.3d at 15 (involving a situation where there was "blatant, inexcusable, [and] repeated lying" about discovery abuse). Moreover, the trial court's finding that Appellant did not comply "at all" with the scheduling order is not entirely accurate, as there appears to be no dispute that Appellant complied with other requirements under the scheduling order unrelated to his experts.

It also bears mentioning that Appellee did not seek the trial court's assistance in securing Appellant's compliance with the scheduling order through the filing of a motion to compel. *See* 1 Lawrence A. Pivnick, *Tennessee Circuit Court Practice* § 18:13, at 886, 887 (2021–2022 ed.) (stating that when a party fails to comply with discovery rules, "a motion to compel discovery . . . . is the usual remedy and the predicate for the [] type of relief [provided for in Rule 37.02]."). Instead, Appellee proceeded directly to the "nuclear option" of asking that Appellant's experts be excluded and summary judgment granted in its favor. *See Geraci v. Andrews*, No. 16 C 721, 2017 WL 1822290, at *1 (N.D. Ill. May 5, 2017) ("The parties in this case have filed cross-motions to compel discovery, with both sides resorting to the nuclear option of asking for a default judgment/dismissal of the case as a sanction for their opponent's claimed recalcitrance."). This motion to exclude was filed little more than two months after Appellant missed his first relevant deadline contained in the scheduling order and two days *before* the deadline to make experts available for depositions. Indeed, the hearing on Appellee's motion to exclude—when Appellant finally made his experts available—occurred only four months after the first missed deadline, while the COVID-19 pandemic was "ongoing and . . . surging." *Fisher*, 604 S.W.3d at 386. Without more findings by the trial court, it is difficult to conclude that Appellee's first application for assistance in the midst of a global health crisis amounts to a situation in which "matters have reached a point in a case" where exclusion is necessary because "the court has been unable to otherwise secure a party's compliance with the discovery rules." *Walls*, 2008 WL 4735311, at *7.

We certainly agree with the trial court that Appellant's dilatory actions resulted in not-insignificant delay in this case. We also agree that Appellant's apparent excuse for his

---

[6] Appellant's counsel provided this explanation at the hearing on the motion to exclude, but did not support it with documentary evidence until the hearing on the motion to alter or amend. Nevertheless, at the hearing on the motion to alter or amend, Appellee's counsel conceded that they had never disputed Appellant's counsel's explanation for why the experts were unavailable. While this explanation for his experts' reluctance to attend depositions is not unreasonable, we agree with the trial court that Appellant's failure to apprise Appellee of this specific fact until the July 2020 hearing is largely inexplicable. We do note, however, that Appellant did seek modification of the scheduling order on the basis of the COVID-19 pandemic in advance of the July 2020 hearing.

- 15 -

failure to communicate with Appellee prior to the filing of the motion to exclude—that his office was transitioning to remote work—is particularly flimsy given the proliferation of electronic means of communication. Certainly, Appellant acted with neglect. We cannot agree, however, that Appellant lacked any reasonable explanation for the delay in actually responding to discovery or that the length of this delay alone supports the harsh result in this case. *See Lowrey*, 2013 WL 937831, at \*5 (citing *Shahrdar*, 983 S.W.2d at 233 (involving a delay of over a year)).

Moreover, while the trial court detailed Appellant's failures in its order, it did not make any specific finding that Appellant's conduct was contumacious, intentional, blatant, or otherwise so egregious as to justify the harshest sanction available. Certainly, exclusion of evidence can be a proper sanction, and the trial court is able to impose it under the proper circumstances. *See* Tenn. R. Civ. P. 37.03(1) ("A party who without substantial justification fails to supplement or amend responses to discovery requests as required by Rule 26.05 is not permitted, unless such failure is harmless, to use as evidence at trial, at a hearing, or on a motion any witness or information not so disclosed."); *see also* Tenn. R. Civ. P. 37.03, advisory commission cmt. to 2006 amend. ("The usual sanction [for failure to supplement or amend discovery responses] will be exclusion of evidence at trial."). But exclusion is not the only available sanction. *See* Tenn. R. Civ. P. 37.03(1) ("In addition to or in lieu of this sanction, the court on motion may impose other appropriate sanctions."); *see also* Tenn. R. Civ. P. 37.03, advisory commission cmt. (noting that the penalties contained therein are likely "guidelines" for the exercise of the inherent power of the court). The trial court must therefore consider whether the sanction is proportional to the failures at issue and whether "other sanctions may be appropriate" under the circumstances. *Lyle*, 746 S.W.2d at 699; *see also Pettus v. Hurst*, 882 S.W.2d 783, 787 (Tenn. Ct. App. 1993) (citing *Lyle*, 746 S.W.2d at 699) (holding that a discovery sanction should be "commensurate with the parties' conduct").

In this case, the trial court's order makes no mention of consideration of other possible sanctions to ensure compliance with its discovery deadlines. Instead, at the very first application for assistance with discovery abuse related to the scheduling order, the trial court chose to employ the mightiest weapon in its arsenal. And while this Court has held that exclusion of a witness is "strongly suggested" when a party "willfully, knowingly, and intentionally withheld the name of a person with knowledge of discoverable matter," the trial court made no express findings that such culpability was present in this case. *Strickland v. Strickland*, 618 S.W.2d 496, 501 (Tenn. Ct. App. 1981).

We next consider the importance of the evidence. *See Mercer*, 134 S.W.3d at 133. Here, there is no dispute that expert proof is absolutely necessary to the prosecution of Appellant's FELA claim. *See Moody v. Maine Cent. R. Co.*, 823 F.2d 693, 695 (1st Cir. 1987) (recognizing that plaintiffs often are required to submit expert testimony to prove "the causal connection between the accident and some item of physical or mental injury" in FELA cases). As previously discussed, because of the necessity of the expert proof,

exclusion of Appellant's experts is in essence a dismissal of the action. *See, e.g.*, ***Branche***, 2008 WL 5504700, at *3; ***Croydon Plastics***, 698 A.2d at 629. Nothing in the trial court's order, however, indicates that it considered the importance of the evidence in determining the proper sanction. This Court has previously held that a trial court abuses its discretion "'when it fails to properly consider the factors customarily used to guide the particular discretionary decision.'" ***Gooding v. Gooding***, 477 S.W.3d 774, 781 (Tenn. Ct. App. 2015) (quoting ***Lee Med., Inc. v. Beecher***, 312 S.W.3d 515, 524–25 (Tenn. 2010)).

We must also consider Appellee's need for time to prepare to meet this evidence. *See **Mercer***, 134 S.W.3d at 133. Although the trial court again does not reference this factor or test specifically, it does appear that the trial court found that Appellee was prejudiced by Appellant's delay in responding to discovery. We agree to an extent with the trial court on this point. As much as expert proof is essential to Appellant's case, the opportunity to rebut that proof is central to Appellee's defense. In this case, Appellant's disclosure of his experts approximately two weeks late is not the real issue.[7] It is Appellant's failure to promptly make them available for depositions that delayed Appellee's ability to properly prepare a defense.[8]

Finally, we consider the possibility and propriety of a continuance. *See **Mercer***, 134 S.W.3d at 133. In this case, it appears that the trial court also did not consider this factor. To be sure, the late availability of Appellant's experts for depositions would make trial on August 12, 2020 virtually impossible for Appellee. So a continuance was very likely necessary. But unlike other cases in which exclusion of evidence was upheld, Appellant did specifically request that the scheduling order be modified in advance of the hearing on the motion to exclude, which would include continuation of the scheduled trial date. *See* ***Masserano v. Masserano***, No. W2018-01592-COA-R3-CV, 2019 WL 2207476, at *7 (Tenn. Ct. App. May 22, 2019) (noting that neither party sought a continuance even though the document at issue was not presented to the opposing party until the eve of trial). Thus, while the trial court was correct in its finding that Appellant waited until the July 2020 hearing to provide dates of availability for his experts, it is not entirely true that Appellant made no prior attempt to ameliorate the issues caused by the delay in completing discovery;

---

[7] There appears to also be an issue regarding whether Appellant properly provided the materials his experts relied on in forming their opinions to Appellee. However, the trial court does not specifically address this alleged failure in its order, so we will not tax the length of this Opinion by analyzing this issue. *See, e.g.*, ***Farmers Mut. of Tennessee v. Atkins***, No. E2011-01903-COA-R9-CV, 2012 WL 982998, at *4 (Tenn. Ct. App. March 21, 2012) (declining to consider a matter when no initial determination was made by the trial court). This alleged failure may be more fully addressed upon remand.

[8] However, at least one of Appellee's expert's reports apparently identifies Appellant's experts. It is unclear, then, to what extent, if any, Appellee's experts in fact were deprived of an opportunity to review Appellant's expert reports. *See, e.g.*, ***SpecialtyCare IOM Servs., LLC***, 2018 WL 3323889, at *24 (quoting ***Cohen v. Clarke***, No. M2012-02249-COA-R3-CV, 2014 WL 107967, at *9 (Tenn. Ct. App. Jan. 10, 2014) (citing generally ***Pegues***, 288 S.W.3d 350)) ("[W]hen imposing the harshest of penalties, i.e., dismissal of the lawsuit, the trial court must endeavor to explain not only the violations, but also how those violations prejudiced or otherwise affected the complaining parties so as to justify dismissal.").

instead, the record shows that Appellant repeatedly asked that the scheduling order be modified in advance of the July 2020 hearing due to delays in his ability to timely respond as a result of the COVID-19 pandemic. The trial court, however, failed to address this request, instead employing the nuclear option of exclusion.

Rather, again, the trial court did not make any specific findings as to whether a continuance would be appropriate or how long it would take the parties to prepare for trial. *Mercer*, 134 S.W.3d 121, 132 (Tenn. 2004) (upholding the exclusion of some, but not all, of the defendant's experts, where the trial court found that the opposing party would need an additional three to six weeks to prepare to meet the evidence); *see also* ***Mercer v. Vanderbilt Univ., Inc.***, No. M2000-00801-COA-R3-CV, 2002 WL 31728864, at *3 (Tenn. Ct. App. Dec. 5, 2002), *aff'd in part, rev'd in part*, 134 S.W.3d 121 (Tenn. 2004) (footnote omitted) (noting that "[a] veritable host of medical experts in various disciplines testified concerning the issues of causation and negligence" for both parties, and thus the exclusion of other evidence was not tantamount to dismissal). Consequently, the trial court's order fails to indicate that it considered the appropriate factors.

In sum, the trial court failed to consider many of the factors that Tennessee courts have held are relevant in determining the appropriate sanction for discovery abuse. Some of the factors that the trial court failed to consider appear to weigh against the harsh sanction imposed in this case, particularly given the unprecedented challenges presented by the global pandemic at that time. In a case where a trial court imposes a less harsh sanction than what is essentially a dismissal, it is likely that a less exacting review of the trial court's findings would suffice. But where the trial court chooses to impose the harshest sanction at its disposal, it is not too heavy a burden to require the trial court to consider each relevant factor in a manner that affords meaningful appellate review. *See **Gooding v. Gooding***, 477 S.W.3d 774, 783 (Tenn. Ct. App. 2015) (quoting ***In re Noah J.***, No. W2014-01778-COA-R3-JV, 2015 WL 1332665, at *5 (Tenn. Ct. App. Mar. 23, 2015)) (noting that the appellate court cannot effectively review a decision for abuse of discretion where the trial court does not indicate "'what legal standard the court applied, or what reasoning it employed[,]'" as an abuse of discretion occurs when the trial court applies an incorrect legal standard); *cf.* ***Smith v. UHS of Lakeside, Inc.***, 439 S.W.3d 303, 313 (Tenn. 2014) ("Providing reasons for a decision reinforces the legitimacy of the legal process which, in turn, promotes respect for the judicial system."). This is particularly true where the failures are attributable solely to an attorney but result in the termination of a client's entire cause of action. *See **Moody***, 247 S.W.3d at 198 (holding that when lesser sanctions are available and the neglect is solely attributable to the attorney, dismissal is generally not warranted). As a result, we must vacate the trial court's decision and remand for reconsideration in light of this Opinion. Should the trial court again choose to impose the harsh sanction of exclusion of Appellant's experts, we encourage the trial court to make detailed findings taking into consideration the applicable legal standards outlined in this Opinion.[9]

---

[9] Should the trial court exercise its discretion to impose a sanction other than exclusion upon

**III.**

In an effort to fully adjudicate this appeal, we will also address another argument raised by Appellee—that Appellant waived any objection to the trial court's grant of summary judgment. While this issue is pretermitted by our disposition of this appeal, we note that Appellee's argument lacks merit. Appellant conceded at the trial level, as he does on appeal, that if he cannot present expert testimony, he would necessarily lose a motion for summary judgment. That is not waiver—instead, it is merely a frank, reasoned concession. Such candor to the courts should be encouraged, rather than meritless arguments that face no reasonable chance of success. If upon remand, the trial court concludes that the applicable factors do not support the harsh sanction of exclusion, the basis for Appellant's concession will no longer exist and the issue of summary judgment would necessarily need to be revisited.

**CONCLUSION**

The judgment of the Madison County Circuit Court is vacated and remanded for further proceedings consistent with this Opinion. Costs of this appeal are taxed to Appellee Illinois Central Railroad Company, for which execution may issue if necessary.

s/ J. Steven Stafford
J. STEVEN STAFFORD, JUDGE

---

remand, we strongly encourage Appellant not to be further dilatory in its discovery responses, as additional delays would only further support the sanction of exclusion.